PATTERSON ET AL. *v.* GRANGE MUTUAL CASUALTY COMPANY.

(No. 85-CV-0472 — Decided February 13, 1986.)

Court of Common Pleas of Clermont County.

*Paul Yelton,* for plaintiffs.
*John H. Engle,* for defendant.

WATSON, J.  This matter arises out of the following scenario. On January 18, 1985, a fire occurred at the home of plaintiffs, Charles and Mary Patterson, causing damage to the home and its contents. The home was insured by defendant, Grange Mutual Casualty Company, against fire by a policy of insurance with limits of $54,200. The Grange Mutual claims supervisor subsequently made contact with the Pattersons in order to investigate and adjust the loss. Thomas Britton prepared an estimate for repairs totalling $44,119. Britton contacted a local contractor, Bob Gee, who confirmed that he could and would do the repairs for the amount of the estimate. Thereafter, Patterson told Britton that he was not going to repair and rebuild, but that he just wanted to have the money due him under the policy. Britton then informed the Pattersons that should they elect to take the money, without rebuilding, they would only be entitled to receive the actual cash value of the damage, which is replacement cost less depreciation. Britton also stated that they would still be entitled to the full amount for repairs up to $44,119 if they began to rebuild within one hundred eighty days.

Nonetheless, the Pattersons accepted the actual cash value amount as determined by Britton, that amount be-

ing $37,739.92, *i.e.,* replacement cost of $44,119 less $6,379.08 depreciation. On February 8, 1985, the Pattersons endorsed Grange's draft for the amount of $37,739.92 and signed a Statement of Proof of Loss that the payment of this amount as to the dwelling was in full satisfaction for that loss. Since that time the Pattersons have not notified Grange of their intent to repair or rebuild, nor have they notified Grange that the repairs have been completed.

On June 3, 1985, the Pattersons filed suit against Grange demanding, *inter alia,* Grange pay them $18,500 still due to them under the policy, the amount demanded representing the difference between the $37,700 already paid and the full amount for which the dwelling was insured ($54,200). Plaintiffs theorize that the insurance company still owes this amount to them under the express provisions of R.C. 3929.25. Plaintiffs further theorize that the release and settlement they executed on February 8, 1985 was a product of fraudulent representations made to them by Britton, the claims adjuster, to obtain their signatures, so that the settlement is voidable. Plaintiffs state that since the time of the settlement they have learned that "not only can the house not be repaired and rebuilt for * * * [$44,119], but also that it would cost less money to replace the entire structure than to attempt to salvage any portion of the structure which remains standing."

Plaintiffs' motion for summary judgment was found to be without merit and was overruled per entry of this court dated November 18, 1985. The matter is now before the court on Grange Mutual's motion in limine filed November 21, 1985, that the court limit the evidence as to the amount of recovery for loss to those terms prescribed by the policy and exclude any evidence or arguments relating to R.C. 3929.25.

R.C. 3929.25 provides as follows:

"A person, company, or association insuring any building or structure against loss or damage by fire or lightning, by renewal of a policy, shall have such building or structure examined by his or its agent, and a full description thereof made, and its insurable value fixed, by said agent. In the absence of any change increasing the risk without the consent of the insurers, and in the absence of intentional fraud on the part of the insured, in the case of total loss the whole amount mentioned in the policy or renewal, upon which the insurer received a premium, shall be paid. If, however, the policy of insurance, by its express terms, permits the policyholder to recover the full cost of repair, or replacement, of the building or structure, without deduction for depreciation or obsolescence, up to the limits of the policy in the event that the building or structure is in fact repaired or replaced, the amount of recovery for any loss under such a policy of insurance shall be as prescribed by the policy.

"The cellar and foundation walls shall not be considered a part of such building or structure in settling losses, despite any contrary provisions in the application or policy."

Defendant states that prior to the 1980 amendment of this statute, there would have been no question of its applicability; in the event of a total loss, payment would have been made for the policy limits representing the value of the property. Defendant states that when the 1980 amendment took effect, the legislature recognized the validity of replacement cost policies and that where a replacement cost policy is in effect between the insurer and insured, the policy's limits control the amount of a recovery for any loss, total or otherwise. Defendant argues that the policy controls since it is a replacement cost policy and therefore that R.C. 3929.25 does not apply herein to require a payment of

the total value for which the dwelling was insured, so that evidence of that value for purposes of showing R.C. 3929.25 total loss recovery is impertinent. The court would also note that defendant disputes that the loss sustained by plaintiffs was a total loss at all, so that reference to the requirement of R.C. 3929.25 to pay maximum coverage for a total loss is inapplicable.

Defendant further argues that only the policy controls. The policy at page 3, paragraph d provides that when the full cost of repair or replacement is more than $1,000, the company is not liable to pay under paragraph a or paragraph b(2).

Paragraph a provides:

"a. If at the time of loss the whole amount of insurance applicable to said building structure for the peril causing the loss is 80% or more of the full replacement cost of such building structure, the coverage of this policy applicable to such building structure is extended to include the full cost of repair or replacement (without deduction for depreciation)."

Paragraph b provides:

"b. If at the time of loss the whole amount of insurance applicable to said building structure for the peril causing the loss is less than 80% of the full replacement cost of such building structure, this Company's liability for loss under this policy shall not exceed the larger of the following amounts (1) or (2):

"(1) the actual cash value of that part of the building structure damaged or destroyed; or

"(2) that proportion of the full cost of repair or replacement without deduction for depreciation of that part of the building structure damaged or destroyed, which the whole amount of insurance applicable to said building structure for the peril causing the loss bears to 80% of the full replacement cost of such building structure."

Under these sections, defendant states that it is not liable for replacement cost until actual repair or replacement is completed. Because no repairs have taken place, the policy allows for payment only of the actual cash value per paragraph b(1), *supra,* and per page 1, where the policy states that it insures the insured "to the extent of the Actual Cash Value of the property at the time of loss * * *."

Plaintiffs, on the other hand, argue that R.C. 3929.25 applies and the evidence and arguments thereon should be permitted, the true issue, governed by that section, being whether there was a total loss requiring full payment of the total insured value of $54,200. Plaintiffs argue that under defendant's interpretation of the policy and statute, an insured could never conclude whether he sustained a total loss and is entitled to the limits of the policy until he actually completed repair of his dwelling only to find that such cost did in fact exceed the face amount of the policy. Plaintiffs also argue that the purpose of R.C. 3929.25 to make the insured whole is thwarted by the policy's limitation that the insurer's liability shall not exceed the smaller of "(1) the limit of liability of this policy applicable to the damaged or destroyed building structure; (2) the replacement cost of the building * * *; or (3) the amount actually and necessarily expended in repairing or replacing said building." See page 3, paragraph c. Plaintiffs argue that defendant's statement that "* * * the purpose of a replacement cost policy is to provide to an insured the appropriate coverage to allow him to be made whole in the event of a total loss by being able to replace or rebuild his property" is undercut by the fact that this policy in any event limits the liability of the company to pay only up to the amount of maximum coverage for which premiums were paid, if that is a smaller amount than the actual cost of replacement or repair.

While the court certainly is mindful of the contradictions apparent in the replacement cost policy's ultimate limitation of the company's liability to the amount of maximum coverage even where the cost to repair or replace is greater, the court cannot avoid the plain meaning of the statute which states that recovery under that precise type of policy for *any loss, total* or *otherwise,* is prescribed by those policy limits. Under the replacement cost policy, even for a total loss, whether or not the dwelling is replaced or repaired, the limits of liability are those specified as the maximum limits, the value insured. The insured, however, finds his greatest protection under the policy in the event of a *partial* loss, where he can collect up to the *total loss* maximum payment upon his rebuilding or repair of the partial damage.

In this case, there is no evidence whatsoever that the insureds have per the policy repaired or rebuilt within a reasonable time, so there can be no argument that they should collect up to the maximum if in fact the loss was a *partial* loss. Assessing the evidence already presented in the case, the court finds nothing, except for the bare allegation in the complaint that the loss was total, which would support the conclusion that the loss was other than partial. In fact, the affidavit of Britton strongly suggests only a partial loss, refuting plaintiffs' unverified assertion. Thus, additionally, the argument that the insureds are entitled to the "whole amount" for which they were insured per R.C. 3929.25 is without merit, that provision contained in the second sentence being inapplicable because there was no total loss per the evidence, and more importantly because the policy controls as a replacement cost policy, per the third sentence.

Therefore, the court finds that the motion in limine is well-taken and granted. The policy is deemed controlling per the statute and the evidence at trial shall pertain only to those provisions.

*Judgment accordingly.*